18169

Josephine G. BLACK, Respondent, v. BARNWELL COUNTY and
State Workmen's Compensation Fund, Appellants

(134 S. E. (2d) 753)

532

*Messrs. Daniel R. McLeod, Attorney General,* and *David Aiken, Assistant Attorney General,* of Columbia, *for Appellants,*

*Messrs. Blatt & Fales,* of Barnwell, *for Respondent,*

February 13, 1964.

LEWIS, Justice.

The late Jeff Black, while sheriff and jailor of Barnwell County, suffered a heart attack on September 27, 1960, from which he died on October 11, 1960. His widow filed claim with the Industrial Commission for death benefits under the Workmen's Compensation Act, contending that the heart attack from which Sheriff Black died was caused by unusual strain and over-exertion in the performance of the duties of his employment and, therefore, was a compensable accident. After taking the testimony, the Industrial Commission concluded that the deceased "did not sustain any injury by accident arising out of and in the course of his employment," and denied the claim. Upon appeal by the claimant from such decision, the circuit court reversed the findings of the Commission and remanded the cause for the purpose of entering an award for the claimant. The decision of the circuit court was based upon the conclusion that the only reasonable inference to be deduced from the evidence was that Sheriff Black died from a heart attack induced by over-exertion in the performance of his duties and, therefore, the Commission should have, as a matter of law, entered an award for the claimant. From

this judgment of the circuit court, the defendants have appealed.

The question to be decided is whether there was any competent evidence to sustain the findings of the Commission that the heart attack suffered by the deceased was not a compensable accident within the meaning of the Workmen's Compensation Act.

The testimony shows that the deceased had been sheriff of Barnwell County for a number of years and, in 1950, assumed the additional duties of jailor of the County. The Barnwell County jail was a two-story building with cells for prisoners located on the second floor and living quarters for the jailor on the first. The second floor was reached by a rather steep stairway of fifteen steps. At the time that the deceased assumed the position of jailor, he and his wife moved into the living quarters in the jail and continued to reside there until his death, serving as both sheriff and jailor. For some time prior to his death, he had suffered from a weakened heart condition, having suffered coronary attacks in 1952 and 1959.

During the late afternoon of September 27, 1960, the deceased made seven or eight trips within a period of a little over an hour up the stairway to the second floor of the jail in answer to numerous requests made by two drunk prisoners who had been placed in a second-floor jail cell. The deceased complained shortly thereafter of feeling badly and, in order to rest, he and his wife left the jail for a visit to their country place for about two hours. Upon returning to their quarters at the jail, the deceased was still not feeling well and he retired for the night. He suffered a heart attack in the early morning hours of the following day, from which he died on October 11, 1960. It is the contention of the claimant, as held by the circuit court, that the evidence conclusively shows that the deceased died from a heart attack induced by unusual and extraordinary exertion in climbing the stairs of the jail in the performance of his duties as jailor on the afternoon of September 27, 1960.

The general rule has been adopted in this State that a coronary attack suffered by an employee constitutes a compensable accident within the meaning of the Workmen's Compensation Act if it is induced by unexpected strain or over-exertion in the performance of the duties of his employment, or by unusual and extraordinary conditions in the employment. *Kearse v. South Carolina Wildlife Resources Department,* 236 S. C. 540, 115 S. E. (2d) 183. It has also been held, as stated in *Walsh v. United States Rubber Co.,* 238 S. C. 411, 120 S. E. (2d) 685, that "if a heart attack results as a consequence of the ordinary exertion that is required in the performance of the duties of the employment in the ordinary and usual manner, and without any outward untoward event, it is not compensable as an accident. The fact that due to weakened heart condition, the exertion required for the ordinary performance of the work is too great for the particular employee, who undertakes to perform it, does not make it a compensable accident. *Sims v. South Carolina State Commission of Forestry,* 235 S. C. 1, 109 S. E. (2d) 701."

Citation of authority is unnecessary for the settled rule that in Workmen's Compensation cases the Industrial Commission is the fact-finding body; and that, on appeal, this Court and the circuit court are limited in their review of the facts to a determination of whether or not there is any competent evidence to support the factual findings of the Commission. When there is a conflict in the evidence, either of different witnesses or of the same witness, the findings of fact of the Commission are conclusive. It is only when the evidence gives rise to but one reasonable inference that the question becomes one of law for the court to decide.

To establish that the death of Sheriff Black resulted from a compensable accident, it was necessary for the claimant to prove (1) a causal connection between the climbing of the stairs and the heart attack from which the deceased

died and (2) that the climbing of the stairs constituted an unusual and extraordinary exertion on his part. If the evidence was conflicting upon these issues, or either of them, such conflicts in the evidence could only be resolved by the Industrial Commission, the fact-finding body.

Whether climbing the stairs by the deceased on the occasion in question constituted an unusual or extraordinary exertion must be determined in the light of his usual and normal duties as jailor of Barnwell County. *Sims v. South Carolina State Commission of Forestry, supra,* 235 S. C. 1, 109 S. E. (2d) 701. The deceased was jailor of Barnwell County and was responsible for the performance of the duties of the office. These duties included caring for the prisoners lodged in the jail and required the use of the stairway in administering to their needs. While there is testimony that the deceased had restricted his climbing of the stairway because of his previous coronary attacks, there is testimony that he did climb the stairs on occasions in the performance of his duties and that he alone determined the necessity for so doing. It is reasonably inferable from all of the facts and circumstances that the deceased in climbing the stairs was about the normal and usual duties of his employment as jailor and that such activity did not constitute unusual and extraordinary exertion. We may concede that the opposite inference might also be reasonably drawn from the evidence. This, however, simply emphasizes the fact that conflicting inferences may be reached from the evidence, which makes the findings of the Commission thereabout binding on this Court and the circuit court on appeal.

We find no material dispute in the medical testimony as to the probable causal connection between climbing of the stairs by the deceased and the heart attack from which he died. Under the uncontradicted testimony that the coronary symptoms developed shortly after the climbing of the stairs by the deceased, all doctors, who expressed an opinion, agreed that such activity would have contributed to

the fatal heart attack. The conflicting evidence upon the remaining material question in the case, however, clearly precludes a determination on appeal of the factual issues as a matter of law.

The judgment of the circuit court is accordingly reversed and the cause remanded for entry of judgment for the defendants in accordance with the decision of the Industrial Commission.

TAYLOR, C. J., and Moss and BRAILSFORD, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting).

Finding myself unable to agree with the majority opinion in this case, I feel it to be my duty to set forth the reasons for my dissent, particularly since the views I hold may possibly have some influence upon the just and proper disposition of similar cases in the future.

In my humble opinion, this case would not likely even be before this court, let alone disposed of in the manner it is being disposed of, were it not for what I regard to be some confusion as to what constitutes a "finding of fact" and what constitutes a "conclusion of law."

In the instant case the hearing Commissioner, the late John W. Duncan, under the denomination of "findings of fact" made the following findings:

"That the claimant has failed to sustain the burden of proof necessary in proving his claim as required by our many Supreme Court decisions involving such death cases.

"That the claimant, Jeff Black, did not sustain any injury by accident arising out of and in the course of his employment resulting in his death."

No other even so-called findings of fact were made which are pertinent to the appeal here. On appeal to the full Commission, the attorney for the claimant challenged the foregoing findings as being conclusions of law rather than find-

ings of fact. The only conclusion of law stated as such by the hearing Commissioner was as follows:

"It is the conclusion of this Commissioner that Section 72-14 defines injury and personal injury."

The full Commission, with the exception of Commissioner Reid, who filed an exhaustive and analytical dissent, affirmed the hearing Commissioner in a very brief order which did not set forth in any detail the basis upon which the hearing Commissioner was being affirmed.

On appeal to the circuit court counsel for claimant again challenged the above quoted so-called findings of fact as being mere conclusions of law rather than findings of fact, but the circuit court did not find it necessary to pass upon such issue since he concluded that under the undisputed facts disclosed by the competent evidence, the claimant was entitled to compensation as a matter of law. While the precise issue, as far as I can ascertain, has not previously been before this court, the entire weight of authority from other jurisdictions is to the effect that the findings here were mere conclusions of law, as contended by the claimant below, rather than findings of fact.

The general rule seems to be that where an ultimate conclusion can be arrived at only by applying a rule of law, the result so reached embodies a "conclusion of law" and is not a finding of fact and not binding upon the reviewing court. Courts from other jurisdictions have held so-called findings of fact almost identical in wording to the so-called findings of fact here, to be mere conclusions of law. *Pribyl v. Standard Electric,* 246 Iowa 333, 67 N. W. (2d) 438; *Stoner v. Howard Sober, Inc.,* 124 Ind. App. 581, 118 N. E. (2d) 504; *Tesch v. Industrial Commission,* 200 Wis. 616, 229 N. W. 194; *Pierce v. Phelps Dodge Corp.,* 42 Ariz. 436, 26 P. (2d) 1017; and other cases in 17 Words and Phrases "Finding of Fact" p. 23 *et seq.*

Since the award of the hearing Commissioner, affirmed by a majority of the full Commission, contained no "find-

ings of fact," it follows that this court is not bound by any findings of fact adverse to the claimant, and since no such findings of fact were made, I think it incorrect for us to deny compensation to the claimant on the erroneous assumption that findings of fact were made and binding upon this court if supported by competent evidence.

There are, of course, cases in which implied findings of fact are necessarily involved in a conclusion arrived at by an Industrial Commission, but this is not such a case. Since the award of the Commission contains no findings of fact and gives no reasons, the conclusion arrived at may have been reached on several theories other than findings of fact adverse to the claimant, supported by competent evidence.

The employer on the hearing offered the testimony of a doctor who expressed the view that the unusual strain and over-exertion endured by the claimant had no causal connection with the fatal heart attack. This evidence was objected to be counsel for the claimant on the ground that it was inadmissible and incompetent under the rules repeatedly laid down by this court governing the admissibility of expert testimony. Without bothering here to detail the testimony of this doctor, it is clear that claimant's objection was well founded under the rules laid down by this court in numerous cases.

On appeal to the circuit court, the judge correctly held the testimony of this doctor to be inadmissible and incompetent, which ruling on the part of the circuit judge is not even challenged on this appeal. However, neither the hearing Commissioner nor the full Commission ruled on the claimant's objection to this testimony and it is entirely possible that the conclusion of the Commission adverse to the claimant involved consideration of . this incompetent testimony. The fact that the hearing Commissioner may very well have considered it is borne out by his remarks disclosed by the record with respect to the medical witnesses when he made the following comment:

" * * * it's up to me in my humble and feeble way to get this and try to determine which of these witnesses I think is right."

Aside from the incompetent evidence, the undisputed medical evidence is that there definitely was a causal connection between the unusual strain and overexertion testified to on the part of the claimant and the fatal heart attack he suffered.

The employer, in the course of the hearing, offered evidence to the effect that there were other causal factors which helped to bring on the heart attack and since no reasons are given for the conclusion arrived at by the Commission, it is entirely conceivable that the Commission erroneously concluded that the unusual strain and exertion had to be the sole causative factor in order to entitle the claimant to compensation. *Sweatt v. Marlboro Cotton Mills,* 206 S. C. 476, 32 S. E. (2d) 762; *Raley v. City of Camden,* 222 S. C. 303, 72 S. E. (2d) 572.

While the foregoing are possible bases upon which the Commission may have arrived at its conclusion, I think from a review of the record that the most probable basis for the denial of compensation was that the majority of the Commission concluded that under the undisputed facts no compensation was due as a matter of law. The record shows that throughout this case the employer has contended that, as a matter of law, it is not liable for compensation under the cases of *Sims v. South Carolina State Commission of Forestry,* 235 S. C. 1, 109 S. E. (2d) 701, and *West v. City of Spartanburg,* 236 S. C. 553, 155 S. E. (2d) 295. The hearing Commissioner was well known to every member of this court, as well as the rest of the judiciary and most of the bar of South Carolina. Whether one agreed or disagreed with his philosophy, his conscientious, constant dedication to protecting the rights of claimants to the full extent that the evidence and law permitted him to do so was well known. A reading of the record here rather clearly indicates to me that at least his

decision, if not that of other members of the Commission, in denying compensation was based on the belief that he considered the *Sims case* controlling, rather than upon any finding of fact adverse to the claimant. In the course of the hearing there was some discussion of the *Sims case* during which the following occurred:

"Commissioner: And the Supreme Court kicked me all over South Carolina on that case.

"Mr. Blatt: But of course we have an entirely different circumstance, here, sir.

"Commissioner: Yes. I'd like to see how that compares with this one."

Under the undisputed facts disclosed by the record, it is inconceivable to me that the hearing Commissioner would have decided this case adversely to the claimant had he not been convinced that the *Sims case* was controlling. Of course, whether or not the other Commissioners who voted with him shared such conviction is simply not disclosed. No good purpose could be served by here discussing either the *Sims case* or the *West case,* but suffice it to say that a reading of the opinions in those cases will show that the facts in each of them are clearly distinguishable from the facts disclosed by the uncontradicted competent evidence in this case.

Of course, there are cases in which there is dispute and conflict in the evidence as to what a claimant usually or customarily did and disputes as to what a claimant was or was not doing at the time of the occurrence. Naturally, in such cases, a finding of fact by the Commission thereabout, supported by competent evidence, is binding upon the reviewing court. However, in the final analysis the decision as to what state of facts constitutes unusual strain and exertion so as to make a claim compensable has always been correctly decided as a question of law, as will be borne out by the many decisions of this court dealing with heart attacks in Workmen's Compensation cases.

Even if the Commission here found as a fact that there was nothing unusual or extraordinary about the activities of the sheriff, which it did not, I do not think it reasonably inferable from the competent evidence that the deceased in climbing the stairs of the jail was about his normal and usual duties of his employment as jailer. It is, of course, true that the sheriff as jailer was responsible for the operation of the jail, but the duties of a person holding the position of both sheriff and jailer are of necessity many and varied. The fact that the sheriff was responsible for the operation of the jail has no real bearing on the issue. The test here is simply what he normally and usually did and did not do in carrying out all of the duties imposed upon him by the position which he held.

The testimony of the widow and several law enforcement officers, including a member of SLED, is to the effect that the sheriff, while responsible for the operation of the jail, did not usually climb the stairs and did so only very rarely, and then only in case of emergency. The usual custom was for either arresting officers, or trusties who served as turnkeys, to take prisoners to and from the second floor of the jail and attend to their needs. No witnesses testified to the contrary. On the afternoon in question, under the undisputed evidence the deceased undertook to and did climb the stairs because two trusties, who usually performed such duties, were not present, one of them being busy out at a lot and barn, and the other away at a farm. Whatever the reason for his undertaking to climb the stairs on that occasion, the fact remains undisputed in the evidence that what the deceased did on the particular occasion was for him a most unusual and extraordinary exertion, rather than something which he usually and normally did in the course of the performance of his duties.

The right to compensation is not affected by the fact that the unusual excessive strain which precipitates a heart attack occurs while he is performing work of the same general type as that in which he is regularly involved.

"The phrase 'unusual or excessive strain' used in many of the cases, is not so limited in its meaning as to include only work of an entirely different character from that customarily done." *Kearse v. South Carolina Wildlife Resources Dept.,* 236 S. C. 540, 115 S. E. (2d) 183.

The material facts disclosed by the competent evidence here being undisputed and uncontradicted, I conclude that the circuit judge was correct in deciding as a matter of law that the claim here is a compensable one. A review of such cases as *Sweatt v. Marlboro Cotton Mills,* 206 S. C. 476, 32 S. E. (2d) 762; *Walsh v. United States Rubber Co.,* 238 S. C. 411, 120 S. E. (2d) 685; and *Ricker v. Village Management Corp.,* 231 S. C. 47, 97 S. E. (2d) 83, shows that in each of said cases compensation was allowed under circumstances much less unusual than the circumstances disclosed by the evidence in this case.

In the *Ricker case* the claimant, a bus driver, was doing nothing more unusual than making a left turn from a proper lane of traffic. True, both the bus and traffiic were heavy, but there was nothing unusual thereabout. The only thing really unusual there was that, until some time shortly before the alleged accident, he had been making the particular turn from the right hand lane rather than from the left hand lane, to give him more room for turning, until an occurrence convinced him that it was not safe to do so.

For the foregoing reasons, I would affirm the decision of the lower court. If, however, I and the circuit judge be in error in our conclusions as to the sole reasonable factual inferences deducible from the evidence, and the majority be correct in concluding that the competent evidence is susceptible of more than one reasonable factual inference, it seems to me that the justice of this case demands that the rights of the parties be not finally concluded upon the record before us since we have no findings of fact by the Commission. The case should at least be remanded to the Commission with directions to make specific findings of

fact about any factual issues which conceivably may be involved herein. I think it unfair and unjust to the widow to conclude her rights on the theory that findings of fact adverse to her were made by the Commission, when, actually, no such findings were made.

In any event, it might not be amiss to remark that the instant case points up the importance of the Industrial Commissioners clearly and specifically stating their findings of fact, particularly in a case such as this, rather than stating or affirming mere ultimate conclusions, so that the reviewing courts may more readily, correctly and justly decide any legal issues presented on appeal.